UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

EDWARD JAMES CROMER,

               Plaintiff,

v.

MDOC PAROLE BOARD et al.,

               Defendants.

_____/

Case No. 2:22-cv-66

Honorable Maarten Vermaat

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff commenced this action by filing his initial complaint on March 21, 2022. (ECF No. 1.) Plaintiff paid the $402 filing fees shortly after he filed the complaint; but due to a clerical error, the payment was not credited to his filing fee obligation until recently. In the meantime, Plaintiff filed an amended complaint (ECF No. 5), his one amendment permitted as a matter of course under Federal Rule of Civil Procedure 15(a)(1).

A month later, Plaintiff sought leave to amend his complaint again. (ECF No. 9). The Court denied leave to amend because Plaintiff had failed to attach a proposed amended complaint. (ECF No. 10.) The Court then received Plaintiff's proposed amended complaint (ECF No. 13), and he asked the Court to reconsider the denial of leave (ECF No. 14.) That motion remains pending.

Plaintiff has since filed another motion for leave to amend his complaint (ECF No. 15), and attached a new proposed amended complaint (ECF No. 15-1). The Court will grant Plaintiff's motion for leave to file his third amended complaint. The Court will direct the clerk to file

Plaintiff's proposed amended complaint (ECF No. 15-1) and exhibit (ECF No. 15-2) as Plaintiff's third amended complaint.

By permitting Plaintiff to file his third amended complaint, Plaintiff's motion for reconsideration of the Court's denial of leave to file the proposed second amended complaint is effectively moot. Accordingly, the Court will deny Plaintiff's motion for reconsideration (ECF No. 14.) By way of that motion, Plaintiff also sought reassurance from the Court that his filing fee payment was received. The Court confirms that Plaintiff has paid the $402.00 filing fee.

Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time

within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis*., 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207

The Court's preliminary review of Plaintiff's complaint under the PLRA has brought to light Plaintiff's attempt to join unrelated claims against many defendants into a single lawsuit. Under Rule 21 of the Federal Rules of Civil Procedure, the Court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. For the reasons set forth below, the Court will drop as misjoined all parties except for a group of defendants who Plaintiff claims are responsible for constitutional violations in connection with parole (herein the Parole Defendants). The Court will dismiss Plaintiff's claims against the dropped parties without prejudice.

With regard to the properly joined claims against the Parole Defendants, under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against the Parole Defendants as frivolous or for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. He is serving

---

n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

a parolable life sentence for second-degree murder. Plaintiff reports that he suffers from a major mental disorder and hypertension and he is medicated for both conditions.

The events described in Plaintiff's sprawling third amended complaint occurred while he was at MBP, but he also sues defendants located at the Saginaw Correctional Facility, the Bellamy Creek Correctional Facility, the Ionia Correctional Facility, and the Carson City Correctional Facility. Plaintiff sues the MDOC Parole Board (MPB); MPB members Brian J. Shipman, Timothy S. Flanagan, and Edwin M. Heap; and MDOC Director Heidi Washington. Those Defendants are referred to collectively herein as the Parole Defendants.

Plaintiff also sues a group of defendants who work at MBP: Warden Erica Huss; Assistant Deputy Warden Unknown Pelky; Assistant Resident Unit Supervisor Peggy Erickson; Hearing Officer Thomas Mohrman; Sergeant Unknown Taylor; and Corrections Officers Unknown Lange and Unknown Kessler. Those Defendants are referred to collectively herein as the Marquette Defendants.

Finally, Plaintiff sues Warden Unknown Winn from the Saginaw Correctional Facility, Warden Unknown Macauley from the Bellamy Creek Correctional Facility, Warden John Davids from the Ionia Correctional Facility, and Warden Unknown Rewerts from the Carson City Correctional Facility. Those Defendant are referred to collectively herein as the Other Wardens.

Plaintiff is a frequent litigant in this Court. His complaints are often difficult to decipher. Judge Janet T. Neff has described Plaintiff's pleading style as "nothing more than unintelligible legalistic gobbledygook." *Cromer v. Snyder*, No. 17-1502, 2017 WL 5158687, at *1 (6th Cir. Oct. 25, 2017). Much of Plaintiff's present third amended complaint fits into that category as well.

Plaintiff alleges that the MPB conducted a file review under Mich. Comp. Laws § 791.234 on May 5, 2021. Plaintiff contends that any such review denied him his right of equal protection,

due process, adequate notice, and service of process. (3d Am. Compl., ECF No. 15-1, PageID.182.) Plaintiff contends that the MPB's denial of parole is necessarily unlawful because:

A.   No one never entered a courthouse or any level of government to assert a constitutional loss or injury entry.

B.   Cromer was denied a right to an Article 3 Court (State). Cromer was not given a common law trial.

C.   Defendants have no show cause, no record of "missing" or "account for" & service of process cannot be made.

D.   There was never a "Justi[ci]able Controversy."

(*Id.*, PageID.183.) Plaintiff posits that because the MPB has no record of a loss, there can be no file review. Plaintiff continues for several more pages of "unintelligible legalistic gobbledygook."

Plaintiff avers that he is being discriminated against because of his mental disability, but he does not explain how. He does identify three other prisoners who he claims the MPB treated differently than him in that the MPD provided "disclosure & notice of who asserted a constitutional loss or injury." (*Id.*, PageID.185.) Plaintiff then delves into the preliminary examination transcripts from his trial more than thirty years ago. He contends those transcripts demonstrate that the government promised it would "disclose an injured party, evidence a concrete injury & transfer of claim" but then never did. (*Id.*, PageID.186.) Thus, Plaintiff concludes "there exist[s] no lifer file to review." (*Id.*)

Plaintiff goes on to claim that he has "a liberty interest in 'amalgam elements,' not a liberty interest in parole . . . ." (*Id.*, PageID.187.) Amalgam elements he reports come from the Supreme Court's opinion in *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1 (1979), which states "The [parole] decision is more subtle and depends on an amalgam of elements, some [of] which are factual . . . etc. etc." (*Id.*) Plaintiff's liberty interest in "amalgam elements" means

that the MPB must have "evidence or record of the person['s] name or testimony to establish injury-in-fact and/or transfer of claim." (*Id*.)

Plaintiff indicates that he brought these critical missing elements to the attention of each of the Other Wardens. A string of retaliatory transfers followed. During May of 2019, Cromer presented the information to Defendant Rewerts; during June he was transferred to Saginaw. At Saginaw, Plaintiff informed Defendant Winn and then, during September of 2019, he was transferred to Bellamy Creek. At Bellamy Creek, Plaintiff informed Macauley. While at Bellamy Creek, Plaintiff was able to identify two other prisoners who were incarcerated "without anyone entering a courthouse asserting a constitutional loss or injury entry." (*Id*., PageID.189.) Plaintiff prepared a hybrid class action to pursue the claims, but he was then violently assaulted by unknown corrections officers and the pleadings "were never seen again." (*Id*.)

Plaintiff was dragged to the hole. While there, he saw and spoke with Macauley. Thereafter, a psychiatrist began sedating Plaintiff "to freeze [his] brain function." (*Id*., PageID.190.) Plaintiff was then transferred to the Ionia Correctional Facility.

Plaintiff informed Warden Davids of his "constitutional loss or injury" point, but Davids did not take corrective actions. Plaintiff filed grievances about it. "Cromer [was] then transferred almost overnight." (*Id*., PageID.191.)

Plaintiff was transferred to MBP, where he remains. He was almost immediately attacked by another prisoner, but before the attack he managed to file a grievance demanding that Warden Huss disclose a record of loss or show cause. (*Id*.) Plaintiff then goes into a detailed explanation as to why his sentencing was flawed.

In June of 2020, Plaintiff again discussed "no record of loss, no show cause" with Warden Huss. (*Id*., PageID.193.) Huss retaliated by putting Plaintiff in a mental ward.

Plaintiff's complaint then shifts to a defendant-by-defendant description of how the other Marquette Defendants have wronged him from May of 2022 through July of 2022.

Finally, Plaintiff raises claims against Defendant Washington regarding MDOC Policy Directive 03.03.105 Prisoner Discipline. Essentially, Plaintiff contends it is a violation of his constitutional rights for Washington to pursue detention or detention-like punishments against Plaintiff because of his major mental disorder.

Plaintiff seeks declaratory and injunctive relief, as well as damages. Plaintiff asks the Court to find that the Michigan parole statute, Mich. Comp. Laws § 791.234, violates the overbreadth doctrine, and to enjoin the MPB Defendants from excluding "amalgam elements" in file review.

## II.   Misjoinder

Plaintiff brings this action against sixteen Defendants alleging discrete events that occurred at five prisons over a little more than one year.

### A.   Improper Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless *one* claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (emphasis added) (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting improper joinder of parties or claims in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004).

The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .

> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three-strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (declining to allow "litigious prisoners to immunize frivolous lawsuits from the 'three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983 suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions. Courts are therefore obligated to reject misjoined complaints like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

The analysis of joinder must start somewhere. There must be a first defendant and claim to permit the Court to determine whether joinder is proper. In Plaintiff's complaint, the first named Defendant is the MDOC Parole Board. The first event Plaintiff describes in the complaint is the board's failure to provide any relief when they conducted a file review during May of 2021. The generally chronological presentation of Plaintiff's factual allegations supports identifying the MPB as the appropriate starting point for the joinder analysis. By accepting Plaintiff's first named party and his chronological presentation of the facts the Court is considering the issue of joinder as Plaintiff has presented it in the complaint.

Plaintiff alleges that the MPB's treatment of his file review violated his constitutional rights in various ways. Plaintiff may join to that claim all claims he has against the MPB and all claims against others that arise out of the same transaction or occurrence as his constitutional claim against the MPB.

Plaintiff does not allege any other claims against the MPB. Plaintiff may join his claims against other parties to the extent those claims arise out of the same transaction or occurrence and present questions of law or fact common to all. Plaintiff's claims against MPB members Shipman, Flanagan, and Heap certainly arise out of the same transaction or occurrence as his claims against the MPB. Plaintiff also sues Defendant Washington regarding the parole denial because she "maliciously and sadistically enact[ed Mich. Comp. Laws §] 791.234 . . . ." (3d Am. Compl., ECF No. 15-1, PageID.208.) Those parties are, therefore, properly joined. Moreover, for judicial

economy, the Court will consider Plaintiff's other claim against Defendant Washington—that she enacted MDOC Policy Directive 03.03.105, which allegedly discriminates against prisoners with major mental disorders. (*Id.*, PageID.212, ¶ 125.)

But no matter how liberally the Court construes the complaint, Plaintiff's claims that Warden Huss and the Other Wardens retaliated against him for complaining about parole deficiencies or that the Marquette Defendants have violated his rights in a number of ways do not arise out of the same transaction or occurrence that gives rise to Plaintiff's claims against the Parole Defendants. Accordingly, the Court concludes that the Marquette Defendants and the Other Wardens are misjoined.

## B.      Remedy

Because the Court has concluded that Plaintiff has improperly joined to this action multiple Defendants and the claims against them, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (*quoting Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989))); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate.").

"Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The statute of limitations, however, is subject to tolling. The Sixth Circuit has recognized that, in prisoner civil rights actions, the statute of limitations is tolled for the period during which a plaintiff's available state administrative remedies were being exhausted. *See Brown v. Morgan*, 209 F.3d 595, 596–97 (6th Cir. 2000).

> The Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1999) . . . . This language unambiguously requires exhaustion as a mandatory threshold requirement in prison litigation.

13

> Prisoners are therefore prevented from bringing suit in federal court for the period of time required to exhaust "such administrative remedies as are available." For this reason, the statute of limitations which applied to Brown's civil rights action was tolled for the period during which his available state remedies were being exhausted.

*Id.* at 596 (citing *Harris v. Hegmann*, 198 F.3d 153, 157–59 (5th Cir. 1999) (per curiam), and *Cooper v. Nielson*, 194 F.3d 1316, 1999 WL 719514 (9th Cir. 1999)). The Sixth Circuit noted that because it could not determine when the period of exhaustion expired, the appropriate remedy was to remand the case to the District Court to "consider and decide the period during which the statute of limitations was tolled and for such other proceedings as may be necessary." *Id*. at 597. Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

Plaintiff's first allegations relate to the MPB's parole actions during May of 2021. Whether or not Plaintiff receives the benefit of tolling during the administrative exhaustion period, *see Brown*, 209 F.3d at 596, and during the pendency of this action, *Kalasho*, 66 F. App'x at 611, Plaintiff has sufficient time in the limitations period to file new complaints against any of the other Defendants, and he will not suffer gratuitous harm if claims against these Defendants are dismissed.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Winn, Rewerts, Macauley, Davids, Huss, Kessler, Taylor, Lange, Erickson, Mohrman and Pelky, from this suit, dismissing Plaintiff's claims against them without prejudice to the institution of new, separate lawsuits. *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs"); *Carney*, 2008 WL 485204, at *3 (same).

If Plaintiff wishes to proceed with his claims against the dismissed Defendants, he shall do so by filing new civil actions *on the form* provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fee. Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. Plaintiff is cautioned that failure to file lawsuits on the required form or filing scattershot complaints full of misjoined claims may result in prompt dismissal upon preliminary review.

### III.    Duplicative Claims against Defendant Washington

Plaintiff raises certain claims against Defendant Washington that relate to her discriminatory enforcement of the prison discipline policy. (3d Am. Compl., ECF No. 15-1, PageID.206–207, 212, ¶¶ 108–115, 125.) Plaintiff has already presented those claims to the Court in ongoing litigation. *Cromer v. Washington*, No. 2:22-cv-75 (W.D. Mich.).[2]

Plaintiffs generally have "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendants." *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977). Accordingly, as part of its inherent power to administer its docket, a district court may dismiss a suit that is duplicative of another federal court suit. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *Adams v. California Dep't of Health Serv.*, 487 F.3d 684, 688 (9th Cir. 2007); *Missouri v. Prudential Health Care Plan, Inc.*, 259 F.3d 949, 953–54 (8th Cir. 2001); *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138–39 (2d Cir. 2000); *Smith v. SEC*, 129 F.3d 356, 361 (6th Cir. 1997). The power to dismiss a duplicative lawsuit is meant to foster judicial economy and the "comprehensive disposition of litigation," *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952), and to protect

---

[2] Although the case has a case number that is later in sequence than the present case, it was actually filed earlier as a multiple plaintiff case and then Plaintiff's part of the case was severed off into a separate action.

parties from "the vexation of concurrent litigation over the same subject matter." *Adam v. Jacobs*, 950 F.2d 89, 93 (2d Cir. 1991).

An action is duplicative and subject to dismissal if the claims, parties and available relief do not significantly differ from an earlier-filed action. *See Serlin v. Arthur Andersen & Co*., 3 F.3d 221, 223 (7th Cir. 1993). Although actions may not "significantly differ," they need not be identical. Courts focus on the substance of the complaint. *See, e.g., Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988) (holding that a complaint was duplicative although different defendants were named because it "repeat[ed] the same factual allegations" asserted in the earlier case). Considering the substantial identity between the legal claims, factual allegations (or lack thereof), temporal circumstances, and relief sought with respect to Defendant Washington's role in enforcing prisoner discipline between the instant case and Case No. 2:22-cv-75, pursuant to the Court's inherent power, this claim is properly dismissed on the grounds that it is duplicative and frivolous.

## IV.      Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility

standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.      The MPB is immune from suit under § 1983

In *Fleming v. Martin*, 24 F. App'x 258 (6th Cir. 2001), the Sixth Circuit Court of Appeals considered whether the MPB was immune from suit under § 1983:

> The Parole Board is entitled to Eleventh Amendment immunity. Unless immunity is expressly waived, a state and its agencies are immune from an action for damages and injunctive relief. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993). The Parole Board is an entity within the MDOC, *see* Mich. Comp. Laws § 791.231a, and the MDOC is, in turn, an administrative agency within the executive branch of Michigan's government. *See* Mich. Const. 1963, art. 5, § 2; *In re Parole of Bivings*, 242 Mich. App. 363, 619 N.W.2d 163, 167–68 (Mich. Ct. App. 2000). Accordingly, the Parole Board is immune from suit under the Eleventh Amendment.

*Fleming*, 24 F. App'x at 259; *see also Goree v. Michigan Parole Board*, No. 19-1817, 2019 WL 7606229, at *1 (6th Cir. Nov. 15, 2019) ("[A]s an agency of the State of Michigan, the Board was entitled to Eleventh Amendment sovereign immunity from suit under § 1983."); *Lee v. Michigan Parole Board*, 104 F. App'x 490, 492 (6th Cir. 2004) ("Lee's claims against the MPB . . . are barred by the Eleventh Amendment.")

Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).

### B.    Neither the board nor the individual Defendants in their official capacities are persons under § 1983

In addition, the State of Michigan, acting through the MPB or the individual defendants in their official capacities, are not "persons" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)).[3] Accordingly, Plaintiff fails to state a cause of action for money damages under § 1983 against the MPB or the individual Parole Defendants in their respective official capacities.

---

[3] "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.' *Kentucky v. Graham*, 473 U.S., at 167, n. 14 [(1985)]; *Ex parte Young*, 209 U.S. 123, 159–160 (1908)." *Will*, 491 U.S. at 71 n.10.

18

**C.** **The actions of the Parole Defendants during May of 2021 did not violate Plaintiff's due process rights**

Plaintiff has previously attacked the constitutionality of the MPB's May 2021 action. *See* Op., *Cromer v. Huss*, No. 2:21-cv-205 (W.D. Mich. Oct. 15, 2021), (ECF No. 7, PageID.150) ("Petitioner . . . challenges . . . a May 5, 2021, action by the Michigan Parole Board, which apparently denied Petitioner parole or a parole hearing."). In that case, the undersigned concluded that the MPB had not violated any due process right by virtue of its May 2021 action. *Id.* (ECF No. 7, PageID.156–157.) For all of the reasons set forth in the Court's opinion, Plaintiff's repetition of the same due process challenges here does not warrant a different result.[4] In multiple opinions the Court has previously explained to Plaintiff why Michigan parole decisions are not protected by the Due Process Clause and the Court will not reiterate the entire analysis here. Plaintiff fails to state a claim for denial of his due process rights.

**D.** **The actions of the Parole Defendants during May of 2021 did not violate Plaintiff's equal protection rights**

At the outset it is important to keep in mind that Plaintiff does not complain that the Parole Defendants discriminated against him by denying him parole or by denying him a parole hearing; rather, he claims the Parole Defendant discriminated against him by purporting to review his file when, in fact, they could not because "no one never entered a courthouse or any level of government to assert a constitutional loss or injury entry" and "Cromer was denied a right to an Article 3 court (state)" and "Cromer was not given a common law trial" and "Defendants have no show cause, no record of 'missing' or 'account for'" and "there was never a 'justi[ci]able

---

[4] Although not specifically relating to the May 2021 MPB action (or inaction), Plaintiff has raised the same sort of claims to attack other earlier MPB actions (or inactions). *See, e.g.*, *Cromer v. Snyder*, No. 1:17-cv-94 (W.D. Mich.); *Cromer v. Napel*, No. 1:12-cv-324 (W.D. Mich.). Those claims, also, were rejected.

controversy." (3d Am. Compl., ECF No. 1, PageID.183.)[5] Although it is difficult to corral Plaintiff's novel theories into any sort of traditional analysis, it appears he is claiming that the flaws in his criminal trial—flaws he has explored at length and without success in a series of habeas petitions—necessarily preclude the existence of a "file" that the Parole Defendants could review. (*Id.*) ("Cromer contends due to the Parole Board having no record of a loss, then it is no file to review.").

Plaintiff's allegations appear to offer a couple of theories to convert these underlying "wrongs" into an equal protection violation. First, Plaintiff argues that these wrongs are a product of discrimination against him because of his major mental disorder. (*Id.*, ¶ 20.) Second, Plaintiff argues that the Parole Defendants "also discriminate by non-disclosure by providing other prisoners with disclosure and notice of who asserted a constitutional loss or injury every time a Parole Board review files." (*Id.*, PageID.185, ¶ 27.)

The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681–82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). Plaintiff's claim does not implicate a fundamental right—Michigan prisoners do not have a fundamental right to parole. And Plaintiff does not allege that he is a member of a suspect class. "[P]risoners are not a suspect class," *Hadix v. Johnson*, 230 F.3d 840,

---

[5] Plaintiff also offers other descriptions of the unlawfulness of the Parole Defendants' actions (or inactions): "'no file' cannot be made by the Defendants due to no record exist transferring a claim over to Defendants," (3d Am. Compl., ECF No. 15-1, PageID.184, ¶ 23); and the Parole Defendants are discriminating against him by failing to consider an "amalgam [of] elements" meaning "the evidence or record of the person name or testimony to establish injury-in-fact and/or transfer of claim." (*Id.*, PageID.187, ¶¶ 33–34.) All of these descriptions, however, filter down to the claim that there is no file to review because of flaws in Plaintiff's criminal prosecution.

843 (6th Cir. 2000), "nor are classifications of prisoners," *Mader v. Sanders*, 67 F. App'x 869, 871 (6th Cir. 2003). Moreover, "[d]isabled persons are not a suspect class for purposes of an equal protection challenge." *S.S. v. Kentucky Univ.*, 532 F.3d 445, 457 (6th Cir. 2008).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'"). Plaintiff's first equal protection claim—that the Parole Defendants discriminated against prisoners with a major mental disorder disability—fails because his own allegations belie the claim. Plaintiff reports that the Parole Defendants provided "disclosure and notice of who asserted a constitutional loss or injury," as part of MPB file review, the relief Plaintiff seeks, for prisoners Robert Perry, Eric McCants, and Dimitrus Clark. But McCants also suffers from a major mental disorder. Compl., *McCants v. Washington*, No. 2:22-cv-53 (W.D. Mich. Mar. 14, 2022), (ECF No. 1, PageID.6–7) ("Plaintiff McCants was/is diagnosed with schizoaffective disorder, depression disorder, anxiety disorder, bi-polar disorder, hearing voices, seeing things that are not there and PTSC. Plaintiff McCants is classified and diagnosed by the Mental Health Department as a prisoner with a 'major mental disorder.'"). And Clark also suffers from a major mental disorder. 2d Am. Compl., *Clark v. Washington*, No. 2:22-cv-73 (W.D. Mich. Apr. 14, 2022), (ECF No. 22, PageID.194) ("Plaintiff Clark is diagnosed with 'schizoaffective', 'delusional', 'hyperactivity disorder', 'depression' and 'hallucination.'"). Plaintiff has signed a complaint specifically stating that Clark has the disorders. Am. Compl., *Johnson v. Washington*, No. 2:22-cv-22 (W.D. Mich. Feb. 11, 2022), (ECF No. 9, PageID.27–28).

21

The Parole Defendants may be treating Plaintiff differently than other prisoners, but they are not doing so solely because he has a major mental disorder. Plaintiff cannot succeed on the claim that the Parole Defendants are discriminating against him ***because*** he has a major mental disorder at the same time he alleges that the Parole Defendants are not discriminating against other persons with major mental disorders. Of course, that does not preclude a claim that the Parole Defendants are singling him out for different treatment with no rational basis—a true "class of one" equal protection claim.

Plaintiff's potential "class of one" claim fares no better. An "equal protection" plaintiff must be similarly situated to his comparators "in all relevant respects . . . ." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011); *see also Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) ("'Similarly situated' is a term of art—a comparator...must be similar in 'all relevant respects.'"); *Tree of Life Christian Schs. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'").

Plaintiff's allegations conclusorily state that he and the other prisoners were similarly situated, but he states no facts to support that claim. Absent such allegations, Plaintiff has failed to show that he is similarly situated to the comparators. *See Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 575 (6th Cir. 2008) ("Although the plaintiffs claim that they have been treated differently from other individuals seeking rezoning, they fail to allege any specific examples of similarly situated individuals. . . ."); *see also Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 460 (6th Cir. 2011) (discussing that to be a similarly-situated person, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would

22

distinguish their conduct or [the defendant's] treatment of them for it'" (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998))).

Moreover, speaking generally to the factors that impact parole, it is readily apparent that Plaintiff has failed to allege that the other prisoners are similarly situated in all relevant respects. There are many factors that are relevant to the MPB's decisions.[6] For example, the parole statute requires the MBP to consider the following: "(a) [t]he offense for which the prisoner is incarcerated at the time of parole consideration[;] (b) [t]he prisoner's institutional program performance[;] (c) [t]he prisoner's institutional conduct[;] (d) [t]he prisoner's prior criminal record [(a]s used in this subdivision, "prior criminal record" means the recorded criminal history of a prisoner, including all misdemeanor and felony convictions, probation violations, juvenile adjudications for acts that would have been crimes if committed by an adult, parole failures, and delayed sentences[)]." Mich. Comp. Laws § 791.233e. Administrative regulations set forth the following

---

[6] Indeed, there are so many factors to consider that, inevitably, parole discretion in Michigan "is broad." *Sweeton*, 27 F.3d 1162, 1165 (6th Cir. 1994). So broad, that it has been characterized as "essentially unfettered" and "virtually unfettered." *Hughes v. White*, No. 02-CV-73957-DT. 2003 WL 21911216, at *2 (E.D. Mich. Jul. 30, 2003) ("[T]he Michigan Parole Board has essentially unfettered discretion whether to grant parole . . . ."); *Melchor v. Steward*, No. 1:21-cv-122, 2021 WL 508303, at *6 (W.D. Mich. Feb. 11, 2021) ("Petitioner . . . seeks . . . a procedurally proper parole hearing where the parole board would, once again, have an opportunity to exercise its virtually unfettered discretion."). Relying on *Engquist v. Oregon Dep't of Ag*., 553 U.S. 591 (2008), this Court has opined that "subjective and individualized decisions, resting on a wide array of factors"—like parole decisions by the MPB—preclude finding a "class of one" equal protection violation. *Franks v. Rubitschun*, No. 5:06-cv-164, 2010 WL 1424253, at *4–8 (W.D. Mich. Mar. 31, 2010) (internal quotation marks omitted). *But see Johnson v. Morales*, 946 F.3d 911, 939 n.5 (6th Cir. 2020) (noting that the Sixth Circuit Court of Appeals had declined to address whether *Engquist* applies outside the public employment context and that there appear to be good reasons to limit *Engquist's* applicability outside the public employment context). The Sixth Circuit Court of Appeals has never stated that *Engquist's* limitation on "class of one" claims would **not** operate to foreclose such a claim as applied to parole decisions in Michigan. That court has simply not provided binding authority regarding the applicability of *Engquist* to parole decisions.

list of factors which may be considered when determining whether parole is in the best interests of society and public safety:

    (a) The prisoner's criminal behavior, including all of the following:

        (i) The nature and seriousness of the offenses for which the prisoner is currently serving.

        (ii) The number and frequency of prior criminal convictions.

        (iii) Pending criminal charges.

        (iv) Potential for committing further assaultive or property crimes.

        (v) Age as it is significant to the likelihood of further criminal behavior.

    (b) Institutional adjustment, as reflected by the following:

        (i) Performance at work or on school assignments.

        (ii) Findings of guilt on major misconduct charges and periods of confinement in administrative segregation.

        (iii) Completion of recommended programs.

        (iv) Relationships with staff and other prisoners.

        (v) Forfeitures or restorations of good time or disciplinary credits.

    (c) Readiness for release as shown by the following:

        (i) Acquisition of a vocational skill or educational degree that will assist in obtaining employment in the community.

        (ii) Job performance in the institution or on work-pass.

        (iii) Development of a suitable and realistic parole plan.

    (d) The prisoner's personal history and growth, including the following:

        (i) Demonstrated willingness to accept responsibility for past behavior.

        (ii) Employment history before incarceration.

        (iii) Family or community ties.

    (e) The prisoner's physical and mental health, specifically any hospitalizations or treatment for mental illness and any irreversible physical or mental condition which would reduce the likelihood that he or she would be able to commit further criminal acts.

Mich. Admin. Code R. 791.7715. Where all of these factors are relevant, Plaintiff's listing of three prisoners and his conclusory statement that they are similarly situated is not sufficient to state a "class of one" discrimination claim.

Even if Plaintiff alleged that he and the three listed prisoners were absolutely equal with regard to every one of these factors, Plaintiff would still not state a claim because they are different with regard to one. Plaintiff posits that each of the other prisoners has a file to review because, with regard to those prisoners, there was someone "who asserted a constitutional loss or injury" when they were prosecuted. (3d Am. Compl., ECF No. 15-1, PageID.185, ¶ 27.) For Plaintiff, on the other hand, "having no record of a loss, . . . [there] is no file to review." (*Id.*, PageID.183, ¶ 20.) It is in considering that difference that Plaintiff's equal protection claim is again revealed to be something else entirely: it is an attack on the validity of this conviction—an attack that this Court and the Sixth Circuit Court of Appeals have rejected no matter what legal hook Plaintiff has tried to hang it on.

Plaintiff disclaims any intent to challenge his conviction, acknowledging that "§ 1983 cannot be used to challenge sentence or conviction." (3d Am. Compl., ECF No. 15-1, PageID.184, ¶ 21.) But his disclaimer does not change the fact that his argument logically depends on the following three statements:

1. If no one entered a courthouse to assert a constitutional loss or injury, then Plaintiff's conviction is invalid.
2. If Plaintiff's conviction is invalid, then there is no file for the MPB to review.
3. If there is no file to review, Plaintiff is being treated differently without any rational basis.

The Court disagrees with each of the three statements, but even if each statement were true, Plaintiff could not go forward with the equal protection claim he proposes because his requests for relief would be barred by the doctrine of *Heck v. Humphrey*, 512, U.S. 477, 486–87 (1994).

In *Heck*, the Supreme Court held that "to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid*, a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Edwards v. Balisok*, 520 U.S. 641, 646 (1997) (emphasis in original). In *Heck*, the Supreme Court held that a state prisoner cannot make a cognizable claim under § 1983 for an allegedly unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486–87 (footnote omitted). The holding in *Heck* has been extended to actions seeking injunctive or declaratory relief. *See Edwards*, 520 U.S. at 646–48 (declaratory relief); *Clarke v. Stalder*, 154 F.3d 186, 189–90 (5th Cir. 1998) (claim for injunctive relief intertwined with request for damages); *Wilson v. Kinkela*, No. 97-4035, 1998 WL 246401, at *1 (6th Cir. May 5, 1998) (injunctive relief).

By disclaiming any intent to invalidate his conviction, Plaintiff attempts to avoid the *Heck* bar. Essentially, Plaintiff asks the Court to jump from the hypothesis of statement 1 to the conclusion of statement 2. That is too far a leap. The fact that no one entered a courthouse to assert a constitutional loss or injury does not mean that there is no file for the MPB to review. Therefore, in addition to all of the other flaws in Plaintiff's "class of one" equal protection claim, it is barred by the doctrine of *Heck*.

### E.    Plaintiff fails to state a claim under the American with Disabilities Act with regard to his parole issues

Plaintiff claims that every constitutional wrong he identifies in the complaint also violates the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131 et seq. (3d Am. Compl., ECF

No. 15-1, PageID.208–212, ¶¶ 116–126.) With regard to the remaining Parole Defendants, Plaintiff states that their actions are "contrary to . . . [the] ADA." (*Id*., PageID.208, ¶ 116.) In his factual allegations relating to the Parole Defendants, Plaintiff states that "he is being discriminated against because [of] his mental disability and being denied the service & programs non-mentally ill prisoner(s) are given." (*Id*., PageID.183.) Plaintiff states further that "[e]ven though Defendants have diagnosed [him] with delusional [dis]order & hallucinations, [he] should still be protected by Congress['] enforcement of the 14th Amendment." (*Id*.) The only other allegation that arguably touches upon some form of disparate treatment states that the Parole Defendants (and Defendant Huss and the Other Wardens) "also discriminate by non-disclosure of providing other prisoners, Robert Perry #312397, Eric McCants #726088, Dimitrus Clark #868212 with disclosure & notice of who asserted a constitutional loss or injury . . . ." (*Id*., PageID.185.) Beyond those paragraphs, however, Plaintiff does not provide any explanation of how the Parole Defendants are discriminating against him in connection with parole.[7]

Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481–82 (6th Cir. 2010) (citing 42 U.S.C. § 12132). In order to state a claim under Title II of the ADA, Plaintiff must show: (1) that he is a qualified individual with a disability; (2) that defendants are subject to the ADA; and (3) that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against

---

[7] Plaintiff does contend that Defendant Washington, in violation of the ADA, discriminates against prisoners who suffer major mental disorders in applying the MDOC Policy Directive regarding prisoner discipline. (3d Am. Compl., ECF No. 15-1, PageID.214, ¶ G.) That claim is addressed separately above.

by defendants, by reason of plaintiff's disability. *See Tucker v. Tennessee*, 539 F.3d 526, 532–33 (6th Cir. 2008); *see also Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003). The term "qualified individual with a disability" includes "an individual with a disability who, with or without . . . the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs). The proper defendant under a Title II claim is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002).

Plaintiff's ADA allegations against the Parole Defendants are conclusory and scant. He quotes the statute, contends he is being discriminated against because of his disability, and then simply throws the statutory cite on to the end of his single paragraph claim against a particular group of defendants that includes the Parole Defendants. (3d Am. Compl., ECF No. 15-1, PageID.181, ¶ 14; PageID.183, ¶ 20; PageID.208, ¶ 116.)

Plaintiff alleges facts regarding the major mental disorder that he contends disables him. Plaintiff alleges facts that identify the "service[], program[], or activit[y]" that the Parole Defendants denied him: MPB file review. And Plaintiff alleges, in a conclusory fashion, that he was denied file review because of his disability; but, his factual allegations support a contrary inference.

Plaintiff specifically identifies other prisoners with major mental disorders who were not denied file review, so it is impossible to infer that disabling mental disorders prompt denials of file

review generally. And, specifically with regard to Plaintiff, Plaintiff provides a perfectly benign reason why his file review did not occur: there is no file to review. The fact that there is no file to review is not, by Plaintiff's explanation, the fault of the Parole Defendants, it is the fault of the prosecutor for failing to assert a constitutional loss or injury. Even if there is some actionable claim that might be extracted from Plaintiff's allegations, that claim is not a violation of Title II of the ADA by the Parole Defendants. Plaintiff's ADA claim is properly dismissed.

## V.    Plaintiff's motion for temporary restraining order (ECF No. 18)

Plaintiff asks the Court to enter preliminary injunctive relief either compelling action or preventing action by Defendants Kessler, Erickson, and Huss. Because all of Plaintiff's claims against those Defendants will be dismissed, Plaintiff's motion will be denied as moot.

**Conclusion**

The Court will deny Plaintiff's motion to reconsider the denial of leave to file his second amended complaint (ECF No. 14) as moot because Plaintiff has proposed a subsequent amendment. The Court will grant Plaintiff leave to file his third amended complaint (comprised of ECF Nos. 15-1 and 15-2). The Court directs the Clerk to file those documents as Plaintiff's third amended complaint. The Court advises Plaintiff that the filing fee for this action has been paid.

The Court has reviewed Plaintiff's third amended complaint under the Federal Rules of Civil Procedure regarding the joinder of claims and parties. The Court concludes that Defendants Huss, Pelky, Erickson, Mohrman, Taylor, Lange, Kessler, Winn, Macauley, Davids, and Rewerts are misjoined. The Court will drop them as parties and dismiss Plaintiff's claims against them without prejudice. Because Plaintiff's motion for a temporary restraining order (ECF No. 18) relates to those parties and claims, the motion will be denied as moot.

With regard to the parties and claims that remain, having conducted the review required by the Prison Litigation Reform Act, the Court will dismiss Plaintiff's claims against Defendants

Washington regarding enforcement of the MDOC Policy Directive on prisoner discipline as duplicative and frivolous. The Court determines that remainder of Plaintiff's complaint against the Parole Defendants will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Nonetheless, should Plaintiff appeal this decision, because Plaintiff is barred from proceeding *in forma pauperis* by the "three-strikes" rule of § 1915(g), Plaintiff will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.


Dated:      September 16, 2022                          /s/ *Maarten Vermaat*
                                                        Maarten Vermaat
                                                        United States Magistrate Judge

30